1  **WO**

2

3

4

5

6                    **IN THE UNITED STATES DISTRICT COURT**

7                        **FOR THE DISTRICT OF ARIZONA**

8

9  Benjamin Taft, et al.,              )    No. CV-11-2599-PHX-SMM
                                       )
10          Plaintiffs,                )
                                       )
11  v.                                 )          **AMENDED**
                                       )    **MEMORANDUM OF DECISION**
12  American Family Mut. Ins. Co.,     )          **AND ORDER**
                                       )
13          Defendant.                 )
                                       )
14  _____    )

15         Pending before the Court is Defendant's Motion to Strike Undisclosed Exhibits and

16  Legal Theories (Doc. 59) and Defendant's Motion for Partial Summary Judgment (Doc. 47).

17  Both matters are now fully briefed. (Docs. 48, 52-53, 56-58, 60-62.) After reviewing the

18  briefs and having determined that oral argument is unnecessary,[1] the Court will grant in part

19  and deny in part Defendant's Motion to Strike Undisclosed Exhibits and Legal Theories, and

20  will grant in part and deny in part Defendant's Motion for Partial Summary Judgment.

21                    **RELEVANT FACTUAL BACKGROUND**

22         On July 27, 2010 Plaintiff Benjamin Taft ("Ben Taft" or "Taft") was operating a

23  motor vehicle headed West on Bell Road in Surprise, Arizona when a motor vehicle traveling

24  South on Grand Avenue ran a red light at an excessive speed and, from the wrong lane,

25  turned left in front of Taft's vehicle causing a collision. (Doc. 53-1 at 2-9.) The driver of

26

27  _____

28  [1]The parties' request for oral argument is denied because the parties have had an
    adequate opportunity to present their written arguments, and oral argument will not aid the
    Court's decision. See Lake at Las Vegas Investors Grp., Inc. v. Pac. Malibu Dev., 933 F.2d
    724, 729 (9th Cir. 1991).

1    the other vehicle, Jacqueline Cox, was cited in the police reports as being at fault.  (Id.)  Taft

2    was taken to the hospital for emergency treatment and evaluation, including x-rays.  (Doc.

3    53-3 at 2-12.)  Immediately after the collision, Taft indicated that he felt pain in his neck,

4    shoulders, back, hips, and left lower extremities.  (Doc. 53-2 at 2-3.)  At the time of the

5    collision Taft further indicated that he felt a popping sensation in his left knee and believed

6    he had broken his left ankle.  (Id.)   Following Taft's discharge from the hospital, he

7    continued medical treatment for his injuries with Dr. Robert Fauer, his family physician.

8    (Doc. 53-4 at 2-20.)

9          Two days after the accident, Dr. Fauer noted extensive bruising and tenderness and

10   diagnosed soft tissue traumas including neck, thorax, lumbar spine, and upper extremities and

11   knee bruising.  (Doc. 53-4 at 2-3.)  Dr. Fauer prescribed medication and physical therapy.

12   (Id. at 2.)  Taft complied with his doctor's orders and followed through with physical therapy

13   treatment. (Doc. 53-5 at 2-57.) Taft continued in physical therapy from August 5, 2010 until

14   discharge from treatment on January 17, 2011.  (Id.)  Taft continued his doctor's visits with

15   Dr. Fauer mainly for his left knee, but also for problems with his left ankle.  (Doc. 53-4 at

16   2-20.)  Dr. Fauer also referred Taft to an orthopedic specialist, Dr. Theodore Hofstedt, for

17   an evaluation.  (Doc. 53-7 at 2-9.)  Dr. Fauer, Dr. Hofstedt, and MRI records support that

18   Taft suffered from a left knee patella injury, specifically grade 2 chondromalacia, and a

19   possible anterior cruciate ligament sprain. (Docs 53-4, 53-6 and 53-7.)

20         At the time of the accident, Taft was a 30-year-old executive chef employed by Fox

21   Restaurant Concepts at North Restaurant in Scottsdale earning $44,000 a year plus bonuses

22   and benefits.  (Doc. 53-10 at 2-7.)  On July 28, 2010, one day after the collision, Taft's

23   position at North was terminated because the restaurant closed. (Doc. 53-2 at 2.)  However,

24   in an affidavit, Taft states that he subsequently received a call from his District Manager at

25   Fox indicating that Fox had purchased an airline ticket for him to fly to California to help a

26   restaurant open in Newport Beach. (Id.)  However, due to his injuries, Taft stated that he was

27   not able to pursue the job opening.  (Id.)  District Manager John Steen stated that "[Taft] was

28   told that had [Taft] been physically able to accept it at that time, employment would have

- 2 -

1   been found at a Fox restaurant, pending permanent placement. Said employment would have

2   been at the same pay and benefit scale that [Taft] had been receiving at North restaurant."

3   (Doc. 56-1 at 2.)

4        Taft's medical file following the accident shows notes from both Dr. Fauer and Dr.

5   Hofstedt taking him off work. (See, e.g., Dr. Fauer's notes, Doc. 53-4 at 2 ("Patient to be off

6   work for the next two weeks . . ."); Doc. 53-4 at 4 (noting that Taft would continue to be "off

7   work for four weeks."); Dr. Hofstedt's notes, Doc. 53-7 at 6 (stating that Taft is in a no work

8   status for two weeks)). In November 2010, Taft returned to work for Fox restaurants. (Doc.

9   53-10.) Taft indicated that the pain in his left knee was too much and had to leave work after

10  three days and go back for medical treatment; he was then terminated by Fox. (Doc. 53-2;

11  Doc. 53-10.) In January 2011, Taft went to work for Fireside Grill as a chef, but allowed him

12  to leave when in pain. At Fireside, Taft disclosed that he made $1,200 a month less than he

13  made with Fox. (Doc. 53-16 at 8, Doc. 57-1 at 35, Doc. 60-3 at 3 citing Doc. 60-1 at 8, Doc.

14  60-3 at 8-10, Doc. 60-12 at 7.) Taft now works for Amuse Bouche. (Id.)

15       Ultimately, Plaintiffs settled with Jacqueline Cox for her policy limits, $50,000. (Doc.

16  48-1 at 10.) In August 2011, claiming injury loss above $50,000, Plaintiffs filed a claim with

17  their insurer, Defendant American Family Mutual Insurance Company for underinsured

18  motorist ("UIM") benefits. (Doc. 53-16.) Defendant investigated Plaintiffs' claims which

19  included a medical review by Registered Nurse Karen Van Belle. (Doc. 53-14.) Nurse Van

20  Belle testified that her responsibilities were to respond to the adjuster's questions and provide

21  information that would assist him in settling the claim. (Id.) Nurse Van Belle opined that

22  Taft had patellar tendonitis and chondromalacia. (Id. at 6-7.) She further opined that she

23  understood Taft to be symptom free at the time of her evaluation. (Id. at 3, 8.) She stated

24  that she was not aware of and did not consider Dr. Fauer's opinion that Taft was not

25  symptom free and would have expenses for future medical care. (Id. at 3.) On November

26  22, 2011, in a one paragraph letter, Defendant informed Plaintiffs that the $50,000 policy

27  limits paid by Cox's insurance company adequately compensated Taft for his injuries. (Doc.

28  48-1 at 10.) This litigation ensued.

**STANDARD OF REVIEW**

I.  Motion to Strike

Federal Rule of Civil Procedure 37(c)(1), provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure is substantially justified or harmless."  Rule 37(c)(1) also provides additional sanctions that a court may impose on a party "in addition to or instead of" striking the witness. Fed. R. Civ. P 37(c)(1)(A)-(C). The 1993 Advisory Committee Notes to Rule 37 state that sanctions under Rule 37(c)(1) are "automatic," and provide "strong inducement for disclosure of material." Fed.R.Civ.P. 37 advisory committee's note (1993).

The Ninth Circuit Court of Appeals has observed that "we give particularly wide latitude to the district court's discretion to issue sanctions under Rule 37(c)(1)." Yeti by Molly, Ltd. v. Deckers Outdoor Corp., 259 F.3d 1101, 1106 (9th Cir. 2001).  As the rule provides, however, sanctions will not be imposed if the failure to disclose was substantially justified or harmless. Fed. R. Civ. P 37(c)(1). "Implicit in Rule 37(c)(1) is that the burden is on the party facing sanctions to prove harmlessness." Yeti by Molly, Ltd., 259 F.3d at 1106.

"For purposes of Rule 37(c)(1), a party's failure to disclose is substantially justified where the non-moving party has a reasonable basis in law and fact, and where there exists a genuine dispute concerning compliance.  See Nguyen v. IBP, Inc., 162 F.R.D. 675, 680 (D. Kan. 1995)). "Failure to comply with the mandate of the Rule is harmless when there is no prejudice to the party entitled to the disclosure." Id.

II.  Partial Summary Judgment

Upon motion at any time, a party defending against a claim may move for "partial summary judgment," that is, "summary judgment in the party's favor as to . . . any part thereof." Fed. R. Civ. P. 56(b).  A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the nonmoving party, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S.

317, 322-23 (1986); Jesinger v. Nevada Fed. Credit Union, 24 F.3d 1127, 1130 (9th Cir. 1994).   Substantive law determines which facts are material.   See Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986); see also Jesinger, 24 F.3d at 1130.   "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."   Anderson, 477 U.S. at 248.   The dispute must also be genuine, that is, the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party."   Id.; see Jesinger, 24 F.3d at 1130.

A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims."   Celotex, 477 U.S. at 323-24.   Summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."   Id. at 322; see also Citadel Holding Corp. v. Roven, 26 F.3d 960, 964 (9th Cir. 1994).   The moving party need not disprove matters on which the opponent has the burden of proof at trial.   See Celotex, 477 U.S. at 317.   The party opposing summary judgment "may not rest upon the mere allegations or denials of [the party's] pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial."   FED. R. CIV. P. 56(e); see Matsushita Elec. Indus. Co. v.Zenith Radio, 475 U.S. 574, 585-88 (1986); Brinson v. Linda Rose Joint Venture, 53 F.3d 1044, 1049 (9th Cir. 1995).

### III.  Breach of Contract

A federal court sitting in diversity applies state substantive law. See Hambleton Bros. Lumber Co. v. Balkin Enterprises, Inc., 397 F.3d 1217, 1227 (9th Cir. 2005).   Thus, this Court applies Arizona law to the interpretation of the insurance contract at issue. See Benevides v. Arizona Prop. & Cas. Ins. Guar. Fund, 184 Ariz. 610, 613, 911 P.2d 616, 619 (App. 1995).   In an action for breach of contract, the plaintiff has the burden of proving "the existence of a contract, breach of the contract, and resulting damages." Chartone, Inc.  v. Bernini, 207 Ariz. 162, 170, 83 P.3d 1103, 1112 (App. 2004) (citing Thunderbird Metallurgical, Inc. v. Ariz. Testing Lab., 5 Ariz.App. 48, 423 P.2d 124 (1976)).

Provisions of insurance contracts should be construed according to their plain and

1   ordinary meaning.  National Bank v. St. Paul Fire & Marine Ins. Co., 193 Ariz. 581, 584, 975

2   P.2d 711, 714 (App. 1999). The interpretation of an insurance contract is a question of law,

3   as is the question of whether the contract's terms are ambiguous.  Id.  In Arizona, courts must

4   construe a clause which is subject to differing interpretations by "examining the language of

5   the clause, public policy considerations, and the purpose of the transaction as a whole." State

6   Farm Mut. Auto. Ins. Co. v. Wilson, 162 Ariz. 251, 257, 782 P.2d 727, 733 (1989).

7           IV.  Bad Faith

8           "An insurance contract is not an ordinary commercial bargain; implicit in the contract

9   and the relationship is the insurer's obligation to play fairly with its insured." Zilisch v. State

10  Farm Mut. Auto. Ins. Co., 196 Ariz. 234, 237, 995 P.2d 276, 279 (2000) (further quotation

11  omitted).  Although insurers do not owe fiduciary duties to their insureds, they do owe some

12  duties of a fiduciary nature including equal consideration, fairness and honesty.  Id.  The

13  insurer is obligated to conduct a prompt and adequate investigation, to act reasonably in

14  evaluating the insured's claim, and to promptly pay a legitimate claim.  Id. at 238, 995 P.2d

15  at 280.

16          "An insurer acts in bad faith when it unreasonably investigates, evaluates, or processes

17  a claim (an "objective" test), and either knows it is acting unreasonably or acts with such

18  reckless disregard that such knowledge may be imputed to it (a "subjective" test)." Nardelli

19  v. Metro. Group Prop. & Cas. Ins. Co., 230 Ariz. 592, 597-98, 277 P.3d 789, 794-95 (App.

20  2012) (citing Zilisch, 196 Ariz. at 238, 995 P.2d at 280). The objective and subjective

21  elements of bad faith are applied to both the insurer's evaluation of the claim and the

22  insurer's claims handling process.  Id.

23          The insurer "may challenge claims which are fairly debatable.  To determine fair

24  debatability, the Court first looks to whether the insurer's actions were objectively

25  reasonable, which is based upon a simple negligence standard–whether the insurance

26  company acted in a manner consistent with the way a reasonable insurer would be expected

27  to act under the circumstances. Trus Joist Corp. v. Safeco Ins. Co. of Am., 153 Ariz. 95, 104,

28  735 P.2d 125, 134 (App. 1986).  If the insurer acted objectively unreasonably, then the Court

moves to the subjective inquiry and determines if the insurer knew or was conscious that its conduct was unreasonable.  Id.  Generally, the insurer's "belief in fair debatability 'is a question of fact to be determined by the jury.'" Zilisch, 196 Ariz. at 280, 995 P.2d at 279 (citing Sparks v. Republic Nat'l Life Ins. Co., 132 Ariz. 529, 539, 647 P.2d 1127, 1137 (1982).  However, if the insured offers no significantly probative evidence that calls into question the insurer's subjective belief in fair debatability, the court may rule on the issue as matter of law. See Knoell v. Metropolitan Life Ins. Co., 163 F. Supp.2d 1072, 1076 (D. Ariz. 2001).  Thus, an insurance company can be liable for bad faith for either unreasonably denying a claim that was not fairly debatable or for acting unreasonably in how it processed a claim whether the claim was fairly debatable or not.

**DISCUSSION**

I.  Motion to Strike–Legal Theories

*Lost Earning Capacity*

Defendant contends that Plaintiffs' Complaint did not include allegations of lost earning capacity and that Plaintiffs never disclosed this item of damages.  (Doc. 59 at 6.) According to Defendant, Plaintiffs did not allege lost earning capacity damages until their response to Defendant's motion for partial summary judgment.  (Id.)  Defendant does not dispute that Plaintiffs timely disclosed lost wages damages, but it does dispute that by disclosing lost wages damages Plaintiffs also disclosed lost earning capacity.  (Doc. 62 at 2.)

Plaintiffs argue that they did properly disclose lost earnings capacity damages to Defendant, citing their initial demand letter, supplemental disclosure statement, and answers to interrogatories.  (Doc. 60 at 3.)  According to Plaintiffs, these documents disclose that due to pain and debilitating injury from the accident, Taft was not able to work the hours necessary to continue in his former position as an executive chef, and that he loses $1,200 in income every month as a result of injuries from the accident.  (Doc. 60-3 at 3 citing Doc. 60-1 at 8, Doc. 60-3 at 8-10, and Doc. 60-12 at 7.)

In a personal injury action, "Arizona allows unlimited recovery for actual damages, expenses for past and prospective medical care, past and prospective pain and suffering, lost

1 earnings, and diminished earning capacity." <u>Wendelken v. Superior Court in and for Pima</u>
2 <u>County</u>, 137 Ariz. 455, 458, 671 P.2d 896, 899 (1983). Thus, in a personal injury action,
3 there is recovery for a decrease in earning capacity as distinct from lost wages. <u>Mandelbaum</u>
4 <u>v. Knutson</u>, 11 Ariz. App. 148, 149, 462 P.2d 841, 842 (1969). "[I]mpairment of earning
5 capacity is an item of general damage, permitting recovery for loss or diminution of the
6 power to earn in the future and is based upon such factors as plaintiff's age, life expectancy,
7 health, habits, occupation, talents, skills, experience, training and industry." <u>Id.</u> at 149-50,
8 462 P.2d at 842-43. "To sustain such an award, the injured person must establish the fact of
9 diminished capacity and the fact that it is permanent." <u>Id.</u> at 150, 462 P.2d at 842.

10      Based upon the Court's review of the discovery documents cited by Plaintiffs, the
11 Court finds sufficient disclosure of Taft's claim for lost earnings capacity damages.
12 Although Defendant claims that Taft has not offered sufficient evidence that he suffers from
13 a permanent impairment (Doc. 62 at 2-3), a motion to strike tests insufficient disclosure, not
14 insufficient proof. Therefore, the Court will not strike Plaintiffs' damage claim for lost
15 earnings capacity.

16      *Institutional Bad Faith/Hidden or Secret Requirements for UIM Benefits*

17      Although Defendant concedes that Plaintiffs disclosed a bad faith claim based on the
18 manner in which Defendant handled Taft's individual claim (Doc. 62 at 3-5), Defendant
19 contends that Plaintiffs failed to properly disclose the facts they rely on in support of their
20 new, previously undisclosed claim that Defendant engaged in institutional bad faith. (Doc.
21 59 at 6.) Defendant contends that Plaintiffs failed to disclose allegations that Defendant has
22 hidden or secret requirements to obtain UIM benefits. (Doc. 62 at 3-5.) The gist of these
23 new allegations is that Defendant had a policy that "required actual contemporaneous
24 off-work slips and that an after-the-fact doctor's affirmation would not suffice." (<u>Id.</u>)
25 Defendant contends that if it had known that Plaintiffs were pursuing an institutional bad
26 faith claim, it would have engaged Plaintiffs in additional discovery, which cannot now be
27 completed unless discovery is reopened. (<u>Id.</u>) Defendant further contends that it would have
28 hired an expert to testify regarding the institutional bad faith claim and the hidden or secret

requirements for UIM benefits.  (Doc. 59 at 7.)

Plaintiffs argue that they are not raising institutional bad faith arguments or new facts in support of bad faith, and that their bad faith claim is limited to Defendant's improper evaluation of Taft's UIM benefits claim.  In support, Plaintiffs state that their response to Defendant's motion for partial summary judgment only stated facts disclosed by the Defendant's representatives during depositions to the effect that Defendant had a policy of only accepting a loss of earnings statement if the doctor contemporaneously made a record taking the plaintiff off work. It would not accept an after-the-fact affirmation by the doctor. Plaintiffs argue that this does not raise a new theory of the case or disclose new facts.

The Court finds that "institutional" bad faith is not a commonly recognized and accepted legal claim.  Although Defendant contends that Plaintiffs have raised a claim of "institutional" bad faith as if it were so, Defendant did not provide the Court with any controlling authority in support of this legal theory.  Furthermore, the Court finds no controlling authority in Arizona establishing institutional bad faith as a claim.  Absent such authority, the Court will not grant Defendant's motion to strike on this basis.  Moreover, Plaintiffs concede that they are not attempting to raise institutional allegations and that they limit their bad faith claim to allegations that Defendant improperly evaluated Taft's UIM claim.  Further, the Court finds that Plaintiffs raised no new allegations regarding hidden or secret requirements to obtain UIM benefits when they referenced statements made by Defendant's representatives in their response to Defendant's motion for summary judgment. The Court construes those references to be in support of Plaintiffs' allegations that Defendant improperly evaluated Taft's UIM claim.  Therefore, Plaintiffs' bad faith claim is limited to allegations that Defendant improperly evaluated Taft's UIM claim, and the Court will not strike Plaintiffs' factual assertions based on statements made by Defendant's representatives during their depositions.

*Emotional Damages*

Defendant concedes that Plaintiffs disclosed a bad faith claim and that Plaintiffs can attempt to seek emotional distress damages related to Defendant's handling of Taft's UIM

1    claim.  (Doc. 62 at 6.)  However, Defendant contends that Plaintiffs' alleged emotional

2    damages claim for the lost equity in their home is not logically related to the administration

3    of Taft's UIM claim and was not timely disclosed. (Id.)  By not receiving timely disclosure

4    of the lost equity claim, Defendant contends that it was prevented from submitting discovery

5    requests on the topic and from asking relevant deposition questions.  (Id.)

6         Plaintiffs agree that they did not lose any equity in their house.  (See Doc. 52 at 8

7    ("The resultant statement of lost equity is just wrong.").)  According to Plaintiffs, they have

8    submitted no new claim for emotional distress damages.  (Doc. 60 at 4.)

9         To the extent that Plaintiffs assert a claim for emotional distress damages related to

10   lost equity in their home, the Court will strike this claim.  Plaintiffs did not lose any equity

11   in their home.  Plaintiffs' claim for emotional distress is therefore limited to those damages

12   related to Defendant's administration or handling of Taft's UIM claim.   See Farr v.

13   Transamerica Occidental Life Ins. Co., 145 Ariz. 1, 7, 699 P.2d 376, 382 (App. 1984); see

14   also Kaufman  v. Langhofer, 223 Ariz. 249, 253, 222 P.3d 272, 276 (App. 2009).

15        II.  Motion to Strike–Exhibits

16        *Dr. Fauer's Medical Report*

17        Defendant moves to strike Dr. Fauer's October 15, 2012 medical report regarding Ben

18   Taft because it was not timely disclosed.  (Doc. 59 at 3.)  Plaintiffs state that Dr. Fauer

19   testified at his October 17, 2012 deposition about this particular appointment with Taft and

20   stated that his report of Taft's visit had not yet been finalized in writing but would be within

21   the week.  (Doc. 60-8 at 2-4.)  Subsequently, counsel for Plaintiffs sent an email to

22   Defendant stating that he had received a copy of Dr. Fauer's report and checking to ensure

23   that Defendant had also received a copy.  (Doc. 60-9 at 2.)  Defendant indicated that he had

24   not as yet but would be looking for it in the mail.  (Id.)  Defendant does not state when they

25   received Dr. Fauers' report; it moves to strike because the document was untimely disclosed.

26   (Doc. 62 at 7-8.)

27        Although Defendant acknowledges that the discovery cut-off deadline in this case was

28   October 19, 2012, it moves to strike a document that Dr. Fauer created post discovery cut-off

1   because it was untimely disclosed.  The Court will deny Defendant's motion.  It is undisputed

2   that Defendant questioned Dr. Fauer about this particular visit during the deposition.  (Doc.

3   60-8 at 2-4.)  On this record, the Court finds that any delayed disclosure of Dr. Fauer's

4   October 15, 2012 medical report regarding Taft was harmless and thus the Court will not

5   strike the report.

6        *December 6, 2010 Report of Illness or Physical Disability*

7        Defendant has withdrawn its request to strike this document.  (Doc. 62 at 8.)

8        *December 9, 2012 Ben Taft Declaration*

9        Defendant seeks to strike certain information contained in Taft's declaration as being

10   untimely disclosed.  (Doc. 59 at 3-4.)  Defendant moves to strike Taft's declaration to the

11   extent that it asserts that Taft had emotional distress related to his house going into

12   foreclosure due to Defendant's bad faith administration of his claim for UIM benefits.  (Doc.

13   62 at 8-9.)  Defendant argues that Plaintiffs did not disclose their allegation that this item of

14   distress damage was connected with his bad faith claim.  (Id.)  Plaintiffs respond that this

15   assertion was disclosed.  (Doc. 60 at 6-8.)

16        The Court finds that Plaintiffs did disclose the following:

> The financial impact on Ben and his wife has been devastating. Their house was in foreclosure and was only recently saved to give them a chance to make a short sale. Due to the financial losses suffered as a result of this collision, Ben and his wife lost what, at one point, had been a quarter of a million dollar house, at a foreclosure auction where it sold for $55,000.

20   (Doc. 60-1 at 8; see also Doc. 60-3 at 10.)  The Court finds that Plaintiffs' disclosure did not

21   connect allegations of bad faith administration of Taft's claim for UIM benefits with

22   emotional distress damages related to their home going into foreclosure.  Rather, as the

23   disclosed statement indicates, the financial losses suffered by Plaintiffs were the result of

24   Taft's car collision and the injuries he suffered.  Thus, the Court will strike from Taft's

25   declaration his assertion that the emotional distress he suffered from their home going into

26   foreclosure was a consequence of Defendant's bad faith administration of his claim for UIM

27   benefits.

28   *///*

1    III.  Defendant's Motion for Partial Summary Judgment

2    *Breach of Contract–UIM Damages Due to Lost Equity in the Home*

3    Defendant moves for partial summary judgment on Plaintiffs' claim for breach of

4  contract contending that its car insurance contract with Plaintiffs for alleged UIM benefits

5  does not include damages related to lost home equity.  (Doc. 47 at 4.)  Defendant argues that

6  under its insuring provisions for UIM coverage, Defendant is obligated to pay Taft

7  compensatory damages for bodily injury only.  (Doc. 48-1 at 41.)  Under the policy, UIM is

8  defined as:

9          [A] land motor vehicle which is insured by a liability bond or policy at the
         time of the accident which provides bodily injury liability limits less than the
10         amount an insured is legally entitled to recover.

11  (Id.)  Based on these provisions, Defendant argues that it only owes Taft UIM compensatory

12  damages for which Taft is legally entitled to recover that are in excess of the $50,000 he

13  already received.  (Id.)  Defendant argues that any loss of equity in Plaintiffs' home is not

14  damage that naturally arises from the contract or was in contemplation of the parties when

15  the auto policy contract was entered.  (Doc. 47 at 5.)  Moreover, Defendant argues that even

16  if Plaintiffs had presented a factual connection between the UIM provisions and lost home

17  equity damages, Plaintiffs have not shown that they suffered lost home equity damages.  (Id.)

18    Plaintiffs respond that their lost home equity claim is not a contract damages claim

19  but an emotional distress claim for damages arising from their claim for insurance bad faith.

20  (Doc. 52 at 8.)  Therefore, this issue is undisputed.  Defendant's car insurance contract with

21  Plaintiffs for alleged UIM benefits does not include Plaintiffs' lost home equity as part of a

22  contract damages claim.  Therefore, the Court will grant Defendant's motion for partial

23  summary judgment on this issue.  Specifically, Defendant did not breach its car insurance

24  contract with Plaintiffs for alleged UIM benefits because the insurance contract does not

25  include lost home equity as part of a contract damages claim.

26    *Insurance Bad Faith*

27    Plaintiffs assert that Defendant unreasonably evaluated and processed their claim for

28  UIM benefits with reckless disregard as to whether it conducted itself unreasonably.  (Doc.

1  52 at 4-7.) First, Plaintiffs argue that Taft had undisputed medical bills in excess of $28,000.

2  (Doc. 53-15 at 3.) Taft also asserts future medical bills of $1,200 a year for exacerbations

3  related to his injuries and $200 a year for continuing office visits and medication. (Docs. 53-

4  11 at 3.) Second, it is undisputed that Plaintiffs received $50,000 from the at-fault driver in

5  the accident. Plaintiffs conclude that Defendant unreasonably denied their UIM claim in bad

6  faith because in addition to Taft's medical bills, Taft's claim for lost wages and lost earning

7  capacity totaled more than $28,000. Defendant challenges Taft's lost wages/earnings

8  damages and the sufficiency of Taft's doctors' notes taking him off work. Ultimately,

9  Defendant determined that the $50,000 Plaintiffs received adequately compensated them and

10 thus that they were not entitled to UIM benefits. (Doc. 48-1 at 10.)

11      The Court first looks to whether the insurer's actions were objectively reasonable,

12 which is based upon a simple negligence standard–whether the insurance company acted in

13 a manner consistent with the way a reasonable insurer would be expected to act under the

14 circumstances. Trus Joist Corp., 153 Ariz. at 104, 735 P.2d at 134. Thus, the Court will first

15 turn to Taft's lost wages and lost earning capacity claims and Defendant's evaluation and

16 justification for denying this claim.

17      On the day of the collision Taft was employed by Fox Restaurant Concepts as a chef

18 at North Restaurant in Scottsdale earning $44,000 a year plus bonuses and benefits. (Doc.

19 53-10 at 2-7.) After the collision, Dr. Fauer stated that Taft would be off work for at least

20 two weeks. (Doc. 53-4 at 2.) On July 28, 2010, one day after the collision, Taft's position

21 at North was terminated because that restaurant closed. (Doc. 53-2 at 2.) However, in an

22 affidavit, Taft states that he subsequently received a call from his District Manager at Fox

23 indicating that Fox had purchased an airline ticket for him to fly to California to help a

24 restaurant open in Newport Beach. (Id.) However, due to his injuries, Taft stated that he was

25 not able to pursue the job opening. (Id.) District Manager John Steen indicated that "[Taft]

26 was told that had [Taft] been physically able to accept it at that time, employment would

27 have been found at a Fox restaurant, pending permanent placement. [] employment would

28 have been at the same pay and benefit scale that [Taft] had been receiving at North

1    restaurant."  (Doc. 56-1 at 2.)

2          Defendant argues that Steen lacked authority to offer Taft a job, that his declaration

3    only expresses a sentiment to employ Taft, that it does not prove Taft actually  had a job and

4    a paycheck after the accident, and that it does not constitute material evidence sufficient to

5    prevent summary judgment on Plaintiffs' bad faith claim.  (Doc. 57 at 11-12.)

6          The Court disagrees with Defendant's assessment of the evidence.  Viewing Steen's

7    declaration in the light most favorable to the nonmoving party, there is a genuine issue of

8    material fact regarding Plaintiffs' claim for lost wages and lost earnings capacity.  Steen's

9    declaration raises a material question of fact as to whether Taft had a reasonable expectation

10   of receiving wages after the accident.  The appropriate question is whether there is sufficient

11   evidence  from  which  reasonable  jurors  could  conclude  that  in  the  investigation  and

12   evaluation of the claim, the insurer acted unreasonably and either knew or was conscious of

13   the fact that its conduct was unreasonable.

14         Regarding  lost  earnings  or  diminished  earnings  capacity,  the  Court  has  already

15   discussed that Taft disclosed his assertion that due to pain and debilitating injury from the

16   accident he was not able to work the hours necessary to continue in his former position as

17   an executive chef, and that he loses $1,200 in income every month as a result of injuries from

18   the accident.  (Doc. 60-3 at 3 citing Doc. 60-1 at 8, Doc. 60-3 at 8-10, and Doc. 60-12 at 7.)

19         Therefore, at issue is whether the insurer acted in bad faith in failing to consider and

20   evaluate his lost earnings evidence given that it had already determined that Taft had not

21   proven that he would have had a job with Fox but for the accident and his injuries.  The

22   Court finds that this evidence is such that a reasonable jury could return a verdict on this

23   issue for the nonmoving party.  See Anderson, 477 U.S. at 248.

24         Next, the Court has reviewed Taft's medical file and the notes from Dr. Fauer and Dr.

25   Hofstedt taking Taft off work for a period of time after the accident.  (See, e.g., Dr. Fauer's

26   notes, Doc. 53-4 at 2 ("Patient to be off work for the next two weeks . . ."); Doc. 53-4 at 4

27   (noting that Taft would continue to be "off work for four weeks."); Dr. Hofstedt's notes,

28   Doc. 53-7 at 6 (stating that Taft is in a no work status for two weeks).  At deposition,

1   Defendant's adjuster Barry Friedman testified that he interpreted Taft "continuing off work"

2   as a statement of historical fact because of the closing of the restaurant, not a doctor's order

3   taking Taft off work.   (Doc. 53-14.)   Plaintiffs argue that Defendant conveniently

4   misinterpreted these doctor's notes because the notes clearly state that Taft should be off-

5   work for a period of time due to his injuries.  (Doc. 52 at 6-7.)  The claims supervisor,

6   Marshall Westbrook, also took the position that the doctor's notes were insufficient.  He

7   testified that there was no documentation to support that Taft was physically unable to

8   perform his job.  (Doc. 53-15 at 6.)

9       An insurance contract is not an ordinary commercial bargain; implicit in the contract

10   and the relationship is the insurer's obligation to play fairly with its insured."  Zilisch, 196

11   Ariz. at 237, 995 P.2d at 279.   Although insurers do not owe fiduciary duties to their

12   insureds, they do owe some duties of a fiduciary nature including equal consideration,

13   fairness and honesty.  Id.  The insurer is obligated to conduct a prompt and adequate

14   investigation, to act reasonably in evaluating the insured's claim, and to promptly pay a

15   legitimate claim.  Id. at 238, 995 P.2d at 280.  The question is whether reasonable jurors

16   could conclude that in the investigation and evaluation of these doctor's notes, Defendant

17   acted unreasonably and either knew or was conscious of the fact that its conduct was

18   unreasonable.  The Court finds that from this evidence a reasonable jury could return a

19   verdict on this issue for the nonmoving party.  See Anderson, 477 U.S. at 248.

20       Therefore, because the jury must decide the question of whether Defendant knowingly

21   acted unreasonably toward Plaintiffs in its investigation and handling of this claim, and

22   because Plaintiffs have presented reasonably competent evidence, this Court must deny

23   Defendant's motion for summary judgment as to the bad faith claim.

24       IV.  Punitive Damages

25       Defendant moves for summary judgment against Plaintiffs' claim for punitive

26   damages, citing insufficient evidence.  (Doc. 47 at 7-8.)

27       In a bad faith tort case against an insurance company, punitive damages may only be

28   awarded if the evidence reflects "something more" than the conduct necessary to establish

the tort. <u>Rawlings v. Apodaca</u>, 151 Ariz. 149, 160, 726 P.2d 565, 576 (1986).  In <u>Rawlings</u>, the Arizona Supreme Court explained the parameters of punitive damages as follows:

> We restrict [the availability of punitive damages] to those cases in which the defendant's wrongful conduct was guided by evil motives. Thus, to obtain punitive damages, plaintiff must prove that defendant's evil hand was guided by an evil mind. . . . [P]unitive damages will be awarded on proof from which the jury may find that the defendant was 'aware of and consciously disregard[ed] a substantial and unjustifiable risk that' significant harm would occur.

151 Ariz. at 162, 726 P.2d at 578 (citations omitted).  Summary judgment on the issue of punitive damages must be denied if a reasonable jury could find the requisite evil mind by clear and convincing evidence; summary judgment should be granted if no reasonable jury could find the requisite evil mind by clear and convincing evidence. <u>Thompson v. Better-Bilt Aluminum Prod. Co.</u>, 171 Ariz. 550, 558, 832 P.2d 203, 211 (1992). The court construes the evidence and all reasonable inferences drawn from the evidence in a light most favorable to the non-moving party. <u>Id.</u>

Plaintiffs argue that they have submitted sufficient evidence in support of punitive damages to avoid summary judgment.  Plaintiffs contend that Defendant knew that Taft was destitute and physically and emotionally vulnerable, yet pursued a course of action in disregard of his interests.  (Doc 52 at 11.)  Plaintiffs also cite the lack of explanation they received from Defendant on the claim, Adjuster Friedman's multiple misinterpretations of Taft's doctor's orders taking him off work, and Supervisor Westbrook's  unfair requirement regarding the precise timing and wording of Doctor's notes needed in order to substantiate Taft being unable to work, and Nurse Van Belle's alleged mistaken conclusion that Taft was symptom free when he returned to work. (<u>Id.</u> at 11-13.)  Plaintiffs argue that the evil mind required to support punitive damages by clear and convincing evidence can be inferred from the testimony of Supervisor Westbrook.  (<u>Id.</u> at 13.)  Westbrook testified that Taft had been fully compensated by the $50,000 he already received; he did not testify that Defendant placed a value higher than that on the claim.  (<u>Id.</u>)

Despite the parties' bona fide dispute as to the amount of Plaintiffs' UIM claim, and despite that Plaintiffs have presented sufficient evidence to support their claim of insurance

bad faith, such facts do not automatically give rise to a claim of punitive damages.  The evidence must establish "something more" than the conduct necessary to establish the tort of insurance bad faith.  Rawlings, 151 Ariz. at 160, 726 P.2d at 576.  To establish a claim for punitive damages, the evidence must support a showing that Defendant (1) intended to cause injury; (2) engaged in wrongful conduct motivated by spite or ill will; or (3) acted to serve its own interests, having reason to know and consciously disregarding a substantial risk that its conduct might significantly injure the rights of others, even though defendant had neither desire nor motive to injure.  See Bradshaw v. State Farm Mut. Auto. Ins. Co., 157 Ariz. 411, 422, 758 P.2d 1313, 1324 (1988).

Here, at the this stage of the litigation, taking all of the evidence and considering it in the light most favorable to the Plaintiffs, Plaintiffs have presented sufficient evidence by which a jury could find that Defendant acted with the requisite "evil mind."  Defendant acted to serve its own interests, having reason to know and consciously disregarding a substantial risk that its conduct might significantly injure the rights of Plaintiffs, even though Defendant had neither desire nor motive to injure.  Therefore, the Court will deny Defendant's motion for partial summary judgment as to punitive damages.

## CONCLUSION

Accordingly, on the basis of the foregoing,

**IT IS HEREBY ORDERED** granting in part and denying in part Defendant's motion to strike undisclosed exhibits and legal theories.  (Doc. 59.)

**IT IS FURTHER ORDERED** denying Defendant's motion to strike Plaintiffs' claim for lost earning capacity and institutional bad faith, and denying the motion to strike Dr. Fauer's October 15, 2012 and December 6, 2010 reports.

**IT IS FURTHER ORDERED** granting Defendant's motion to strike to the extent that Plaintiffs assert a claim for emotional distress damages related to lost equity in their home, and striking from Taft's declaration his assertion that emotional distress from their home going into foreclosure was related to Defendant's alleged bad faith administration of his claim for UIM benefits.

1    **IT IS FURTHER ORDERED** granting in part and denying in part Defendant's
2    motion for partial summary judgment.  (Doc. 47.)

3    **IT IS FURTHER ORDERED** granting Defendant's motion for partial summary
4    judgment as to Plaintiffs' breach of contract claim on the issue of lost home equity damages.
5    Defendant did not breach its insurance contract by denying UIM benefits for lost home
6    equity.

7    **IT IS FURTHER ORDERED** denying Defendant's motion for partial summary
8    judgment as to Plaintiffs' claim of insurance bad faith.

9    **IT IS FURTHER ORDERED** denying Defendant's motion for partial summary
10   judgment against Plaintiffs' claim for punitive damages.

11   **IT IS FURTHER ORDERED** setting this case for a Final Pretrial Conference on
12   **November 18, 2013 at 2:30 p.m.** This matter appearing ready for trial, a Final Pretrial
13   Conference shall be held in Courtroom 605, Sandra Day O'Connor U.S. Federal Courthouse,
14   401 W. Washington St., Phoenix, Arizona 85003. The attorneys who will be responsible for
15   the trial of the case shall attend the Final Pretrial Conference. Counsel shall bring their
16   calendars so that trial scheduling can be discussed.

17   **IT IS FURTHER ORDERED** that, if this case shall be tried to a jury, the attorneys
18   who will be responsible for the trial of the lawsuit shall prepare and sign a <u>Proposed Pretrial</u>
19   <u>Order</u> and submit it to the Court on **<u>Friday, October 25, 2013.</u>**

20   **IT IS FURTHER ORDERED** that the content of the Proposed Pretrial Order shall
21   include, but not be limited to, that prescribed in the <u>Form of Pretrial Order</u> attached hereto.
22   Statements made shall not be in the form of a question, but should be a concise narrative
23   statement of each party's contention as to each uncontested and contested issue.

24   **IT IS FURTHER ORDERED** pursuant to Federal Rule of Civil Procedure 37(c) that
25   the Court will not allow the parties to offer any exhibits, witnesses, or other information that
26   were not previously disclosed in accordance with the provisions of this Order and/or the
27   Federal Rules of Civil Procedure and/or not listed in the Proposed Pretrial Order, except for
28   good cause.

**IT IS FURTHER ORDERED** directing the parties to exchange drafts of the Proposed Pretrial Order **no later than seven (7) days before the submission deadline**.

**IT IS FURTHER ORDERED** that the parties shall file and serve all motions in limine no later than **Friday, October 25, 2013.** Each motion in limine shall include the legal basis supporting it. Responses to motions in limine are due **Friday, November 1, 2013.** No replies will be permitted. The attorneys for all parties shall come to the Final Pretrial Conference prepared to address the merits of all such motions.

**IT IS FURTHER ORDERED** directing the parties to complete the following tasks by the time of the filing of the Proposed Pretrial Order if they intend to try the case before a jury:

(1)     The parties shall <u>jointly</u> file a description of the case to be read to the jury.

(2)     The parties shall <u>jointly</u> file a proposed set of voir dire questions. The voir dire questions shall be drafted in a neutral manner. To the extent possible, the parties shall stipulate to the proposed voir dire questions. If the parties have any disagreement about a particular question, the party or parties objecting shall state the reason for their objection below the question.

(3)     The parties shall file a proposed set of <u>stipulated</u> jury instructions. The instructions shall be accompanied by citations to legal authority. If a party believes that a proposed instruction is a correct statement of the law, but the facts will not warrant the giving of the instructions, the party shall so state. The party who believes that the facts will not warrant the particular instruction shall provide an alternative instruction with appropriate citations to legal authority.

(4)     Each party shall submit a form of verdict to be given to the jury at the end of the trial.

**IT IS FURTHER ORDERED** directing the parties to submit their proposed joint statement of the case, joint voir dire questions, stipulated jury instructions, and verdict forms.

**IT IS FURTHER ORDERED** that if the case will be tried to the Court, rather than to a jury, <u>instead of</u> filing a Proposed Pretrial Order, each party shall submit proposed

findings of fact and conclusions of law by the same date the Proposed Pretrial Order is due.

**IT IS FURTHER ORDERED** that the parties shall keep the Court apprised of the possibility of settlement and should settlement be reached, the parties shall file a Notice of Settlement with the Clerk of the Court.

**IT IS FURTHER ORDERED** that this Court views compliance with the provisions of this Order as critical to its case management responsibilities and the responsibilities of the parties under Rule 1 of the Federal Rules of Civil Procedure.

DATED this 1st day of October, 2013.

Stephen M. McNamee
Senior United States District Judge

1
2
3
4
5
6                    **IN THE UNITED STATES DISTRICT COURT**

7                        **FOR THE DISTRICT OF ARIZONA**

8

9    ,                                    )    No. CV -PHX-SMM
                                          )
10              Plaintiff,                 )    **PROPOSED   PRETRIAL   FORM   OF**
                                          )    **ORDER**
11   vs.                                   )
                                          )
12                                         )
                                          )
13   ,                                     )
                Defendant.                 )
14                                         )
                                          )
15   _____ )

16          Pursuant to the Scheduling Order, the following is the joint Proposed Final Pretrial

17   Order   to   be   considered   at   the   Final   Pretrial   Conference   set   for

18   _____, _____ .

19          A.   **COUNSEL FOR THE PARTIES**

20               (Include mailing address, office phone and fax numbers).

21               Plaintiff(s):

22               Defendant(s):

23          B.   **STATEMENT OF JURISDICTION**.

24               Cite the statute(s) which gives this Court jurisdiction.

25               (e.g., Jurisdiction in this case is based on diversity of citizenship under Title 28

26               U.S.C. §1332.)

27               Jurisdiction (is/is not) disputed.

28

(If jurisdiction is disputed, the party contesting jurisdiction shall set forth with specificity the bases for the objection.)

C.  **NATURE OF ACTION**.

Provide a concise statement of the type of case, the cause of the action, and the relief sought.

(e.g., - This is a products liability case wherein the plaintiff seeks damages for personal injuries sustained when he fell from the driver's seat of a forklift. The plaintiff contends that the forklift was defectively designed and manufactured by the defendant and that the defects were a producing cause of his injuries and damages.)

D.  **CONTENTIONS OF THE PARTIES**.

With respect to each count of the complaint, counterclaim or cross-claim, and to any defense, affirmative defense, or the rebuttal of a presumption where the burden of proof has shifted, the party having the burden of proof shall list the elements or standards that must be proved in order for the party to prevail on that claim or defense. Citation to relevant legal authority is required.

(e.g., In order to prevail on this products liability case, the plaintiff must prove the following elements . . . .

In order to defeat this products liability claim based on the statute of repose, the defendant must prove the following elements . . . .)

E.  **STIPULATIONS AND UNCONTESTED FACTS**

1. The following facts are admitted by the parties and require no proof:

2. The following facts, although not admitted, will not be contested at trial by evidence to the contrary:

**F.  CONTESTED ISSUES OF FACT AND LAW**

1. The following are the issues of fact to be tried and decided: (Each issue of fact must be stated separately and in specific terms. Each parties' contention as to each issue must be set forth with respect to each and every issue of fact). E.g., Issue # 1: Whether Plaintiff used due care.

> Plaintiff Contends: Plaintiff looked both ways before stepping into the street . . . .

> Defendant Contends: Plaintiff was chasing a ball and darted out into the street without looking . . . .

2. The following are the issues of law to be tried and determined: (Each issue of law must be stated separately and in specific terms. Each parties' contention as to each issue must be set forth with respect to each and every issue of law). E.g., Issue # 1: Whether Plaintiff's suit is barred by the doctrine of laches.

> Plaintiff Contends: . . .

> Defendant Contends: . . .

**G.  LIST OF WITNESSES**.

A jointly prepared list of witnesses and their respective addresses, identifying each as either plaintiff's or defendant's, and indicating whether a fact or expert witness, must accompany this proposed order. If a witness' address is unknown, it should be so stated. A brief statement as to the testimony of each witness must also be included. Additionally, the parties shall designate which witnesses (1) shall be called at trial, (2) may be called at trial, and (3) are unlikely to be called at trial.

Additionally, the parties shall include the following text in this portion of the Proposed Pretrial Order:

The parties understand that the Court has put them on notice that they are responsible for ensuring that the witnesses they want to put on the stand to testify

are subpoenaed to testify, regardless of whether the intended witness is listed as a witness for the plaintiff(s) or the defendant(s). Simply because a party lists a witness does not mean that the witness will be called. Therefore, a party should not rely on the listing of a witness by the opposing party as an indication that the witness will be called. To the extent possible, the parties shall stipulate to the witnesses who will be called to testify.

H.  **LIST OF EXHIBITS**.

1. The following exhibits are admissible in evidence and may be marked in evidence by the Clerk:

a. Plaintiff's Exhibits:

b. Defendant's Exhibits:

2. As to the following exhibits, the parties have reached the following stipulations:

a. Plaintiff's Exhibits:

b. Defendant's Exhibits:

3. As to the following exhibits, the party against whom the exhibit is to be offered objects to the admission of the exhibit and offers the objection stated beneath:

a. Plaintiff's Exhibits:

(E.g., City Hospital records of Plaintiff from March 6, 1985 through March 22, 1985. Defendant objects for lack of foundation because . . . . (the objection must specify why there is a lack of foundation)).

b. Defendant's Exhibits:

(E.g., Payroll records of Plaintiff's employer which evidences payment of Plaintiff's salary during hospitalization and recovery. Plaintiff objects on the ground of relevance and materiality because (the objection must specify why there is a relevancy or materiality problem)).

- 4 -

I.   **DEPOSITIONS TO BE OFFERED**.

The parties shall list the depositions to be used at trial. The portions to be read at trial shall be identified by page and line number. Counsel should note objections to deposition testimony by writing the objection in the margins of that portion of the text of the deposition to which the objection is made. Moreover, these objections shall be explained in this portion of the Proposed Pretrial Order. As is the Court's practice at trial, it is <u>not sufficient</u> for an objecting party to simply state perfunctory grounds for an objection (e.g., "hearsay" or "lack of foundation") contained in the Proposed Pretrial Order. Each party must explain the basis for each perfunctory objection (e.g., <u>why</u> it is hearsay, <u>why</u> it lacks foundation, <u>why</u> it is irrelevant).

J.   **MOTIONS IN LIMINE**. Motions in limine shall be served, filed, and responded to in accordance with the instructions contained in the Order Setting Final Pretrial Conference.

K.   **LIST OF ANY PENDING MOTIONS**

L.   **PROBABLE LENGTH OF TRIAL**

M.   **JURY DEMAND** - A jury trial (has) (has not) been requested. If a jury trial was requested, (indicate the appropriate selection):

1. the parties stipulate the request was timely and properly made;

2. the (Plaintiff or Defendant) contends the request was untimely made because: (explain why request was untimely); or

3. the (Plaintiff or Defendant contends that although the request for trial by jury was timely, the request is improper as a matter of law because: (indicate the legal basis why a jury trial would be improper).

For a Bench Trial

N-1. **PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW** shall be filed and served by each party in accordance with the instructions contained

- 5 -

in the Order Setting Final Pretrial Conference.

For a Jury Trial

N-2.**STIPULATED JURY INSTRUCTIONS, PROPOSED VOIR DIRE QUESTIONS, AND PROPOSED FORMS OF VERDICT** shall be filed in accordance with the instructions contained in the Order Setting Final Pretrial Conference.

O.  **CERTIFICATIONS**. The undersigned counsel for each of the parties in this action do hereby certify and acknowledge the following:

1. All discovery has been completed.

2. The identity of each witness has been disclosed to opposing counsel.

3. Each exhibit listed herein (a) is in existence; (b) is numbered; and (c) has been disclosed and shown to opposing counsel.

4. The parties have complied in all respects with the mandates of the Court's Rule 16 Order and Order Setting Final Pretrial Conference.

5. [Unless otherwise previously ordered to the contrary], the parties have made all of the disclosures required by the Federal Rules of Civil Procedure.

APPROVED AS TO FORM AND CONTENT:

_____     _____

Attorney for Plaintiff                        Attorney for Defendant

Based on the foregoing,

**IT IS ORDERED** that this Proposed Pretrial Order jointly submitted by the parties is hereby **APPROVED** and is thereby **ADOPTED** as the official Pretrial Order of this Court.

DATED this _____ day of _____, _____.


_____
Stephen M. McNamee
Senior United States District Judge